

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| ROBBYE DUBOIS | CIVIL ACTION NO. 07-0302 |
| VERSUS | JUDGE DONALD E. WALTER |
| LIFECARE MANAGEMENT SERVICES, L.L.C. and LIFECARE HOLDINGS, INC. | MAGISTRATE JUDGE HORNSBY |

### MEMORANDUM RULING

Before this Court is a Motion for Summary Judgment [Doc. #15] filed on behalf of defendants, LifeCare Management Services, L.L.C. and LifeCare Holdings, Inc., pursuant to Federal Rule of Civil Procedure 56. Plaintiff opposes this motion. For the reasons assigned herein, defendants' motion is **GRANTED**, and plaintiff's claims are **DISMISSED**.

### STATEMENT OF THE CASE

Plaintiff, Robbye Dubois ("Dubois"), brings this action against her former employer, defendants, LifeCare Management Services, L.L.C. and LifeCare Holdings, Inc. ("LifeCare"), asserting alternative claims for breach of her employment or consulting agreements. Dubois also asserts a claim under La. R.S. 23:631 and 632 related to an employer's obligation to timely pay its employees following their resignation or discharge. Defendants assert that Dubois was paid for all work she performed and that she can provide the Court no basis for any further obligation to pay the wages claimed.

I. **Factual Background.**

LifeCare operates multiple acute care hospitals in nine states, including Louisiana and Texas. Defendants' Statement of Uncontested Material Facts ("SUF"), ¶1.[1] Dubois began her employment with LifeCare in 1993 as a Registered Nurse. Id., at ¶3; Petition, ¶3. Over the next ten years, Dubois was promoted to various positions until 2003 when she was named corporate Vice President of Clinical Services. See Defendants' SUF, ¶¶3-5. LifeCare provided Dubois with offices in both Shreveport and Plano, Texas. Id., at ¶5. The position of Vice President of Clinical Services required more travel outside of the Shreveport area than the one or two annual trips required of Dubois in her immediately prior position as Chief Clinical Officer for the Shreveport area. Id., at ¶¶4-5. Dubois willingly accepted the new position. Id., at ¶5.

As Vice President of Clinical Services, Dubois "generally traveled every week" outside of the Shreveport area, and recognized that the travel, though grueling at times, was an "important, necessary part of [her] job." Id., citing Dubois Depo., pp. 32-33. On August 23, 2004, Dubois and LifeCare entered into an employment agreement related to her employment as Vice President of Clinical Services (the "Employment Agreement"). See Dubois Depo., Exh. 2, Employment Agr.; Defendants' SUF, ¶6.

Under the terms of the Employment Agreement, in exchange for Dubois "devot[ing her] full-time (except for reasonable vacation time and absence for any disability), attention and best efforts

---

[1] In accordance with Local Rule 56.1, defendants, the moving parties, filed a statement of material facts as to which they contend there is no genuine issue to be tried. Pursuant to Local Rule 56.2, all material facts set forth by the moving party will be deemed admitted for the purpose of this motion unless controverted. Plaintiff's Statement of Controverted Material Facts begins with reference to Defendants' SUF ¶10. Thus, for purposes of this motion, defendants' SUF ¶¶1-9 are deemed admitted.

to the performance of [her] duties" as Senior Vice President of Clinical Services, LifeCare would pay Dubois a base salary of $158,100 annually. Dubois Depo., p. 46; Employment Agr., §§1.2, 3.1. The Employment Agreement provided for an initial term of one year, with that term to be automatically extended for an additional consecutive year, "unless either Party gives notice to the other . . . that the notifying Party does not wish to extend the Term." Id., at §§2.1-2.2. Dubois' base salary would be "prorated (on a daily basis) for any partial payroll period of employment under" the Employment Agreement. Id., at §3.1.

The Employment Agreement further provided that if Dubois' employment terminated for any reason, LifeCare would provide her (1) any base salary earned but not yet paid "through the effective date of termination of employment (the '*Termination Date*')," (2) all benefits, or their cash equivalent, earned or vested, and payable through the Termination Date, and (3) all reimbursable expenses due but not yet paid as of the Termination Date. Id., at §5.1. Once those amounts were paid, the parties agreed that LifeCare would have "no further obligation or liability under [the Employment Agreement] for base salary or any other cash compensation or for any benefits under any of the Compensation and Benefit Plans." Id., at §5.

The Employment Agreement also provided for the possibility of severance benefits of six months' base salary in addition to the amounts or benefits to which Dubois would be entitled under §5.1, and any rights or remedies she would have under the Compensation and Benefit Plans. See id., at §5.2. To qualify for severance pay, one of the following was required: death, disability, termination of employment "by LifeCare without cause" or expiration of the Employment Agreement without renewal. Id. Assuming one of the four qualifying events occurred, Dubois would receive severance payments only if LifeCare received a Settlement Agreement, General

3

Release and Covenant Not to Sue executed by Dubois, and Dubois complied with the terms of the confidentiality, non-compete, non-solicitation and development provisions of the Employment Agreement. Id., at §§5.3 - 9. Under the Employment Agreement, Dubois agreed not to compete while she was employed by LifeCare and for the six months immediately following any employment termination. Id., at §7; Dubois Depo., p. 47; Defendants' SUF, ¶12.[2] Any changes to the terms of the Employment Agreement had to be made in writing and signed by both parties. Employment Agr., §2.

It is undisputed that LifeCare allowed the Employment Agreement to renew, pursuant to its automatic renewal clause, for an additional year beginning on August 23, 2005. Defendants' SUF, ¶14.[3] The Court will take judicial notice that on August 29, 2005, Hurricane Katrina hit New Orleans and the Gulf Coast. See Fed. R. Evid. 201(b)(2).

In early October 2005, Dubois traveled to the LifeCare office in Plano, Texas to speak with her supervisor, Bryan Burklow ("Burklow"), regarding the possibility of altering her work schedule. Dubois Depo., pp. 59-62. Dubois explained that due to the work-related stresses she encountered as a result of Hurricane Katrina, Dubois "wanted to cut back on [her] travel and change her working arrangements." Id., at pp. 62-3. Dubois informed Burklow that although she could not afford to resign, she wanted a schedule that would not require her to travel on a weekly basis. Id., at p. 63. Burklow advised Dubois to take two weeks off of work to rest and to then return to again discuss her work arrangements. Id., at pp. 64-7.

---

[2] Plaintiff omits reference to Defendants' SUF, ¶12 in her Statement of Controverted Material Facts. Thus, it is deemed admitted pursuant to L.R. 56.2.

[3] See Note 2, but as to Defendants' SUF, ¶14.

Dubois took Burklow's advice and returned to Plano to speak with him approximately two weeks later. Id., at p. 67. At that time, Dubois told Burklow that she "was still struggling with just everything that had occurred with Hurricane Katrina and the toll it had taken. It had not stopped. It had never stopped. And that [she] really felt like at [that] time [she] needed to work a different type schedule and not be on the road on a weekly basis . . . [she] wanted to have more time at home and still maintain with LifeCare." Id., at pp. 67-8. Dubois advised that she wanted to "work something out where [she] could continue to receive [her] medical benefits and continue to get paid in some form or fashion." Id., at p. 68. At or around that time, it was proposed that Dubois stay on with LifeCare as a consultant. Id., at pp. 69.

Based on her conversation with Burklow, Dubois understood that she would be employed as a consultant for LifeCare for at least four months, and would receive pay for that time based on her salary as Vice President of Clinical Services. Id., at pp. 83-4, 86, 88-90. Dubois also believed that she would continue to receive medical benefits through those four months. Id., at pp. 83, 89-90. Dubois further understood that, as a consultant, LifeCare would require her to be available for fewer hours than she had been working as Vice President, with a significant decrease in travel obligations. Id., at pp. 89-90, 97.

On October 18, 2005, Dubois attended an administrator's meeting for LifeCare in Dallas, Texas. Id., at pp. 78-9, 98. During that cocktail reception and dinner meeting of approximately 25 to 30 administrators and members of the corporate staff, Burklow announced that Dubois would be a consultant with the company, and was planning to spend more time with her family. Id., at pp. 98-100; Burklow Decl., ¶12.

On November 6, 2005, Dubois sent an e-mail to Jill Force ("Force"), General Counsel for

LifeCare, wherein Dubois inquired about her "severance agreement." Dubois Depo., Exh. 4 to depo. Force responded to Dubois' inquiry the same day via e-mail, and attached a draft of the "consulting/severance agreement" from LifeCare. Dubois Depo., pp. 110-15, Exh. 3 to depo. Under the terms of the proposed consulting/severance agreement, Dubois would end her employment with LifeCare on November 19, 2005, and would provide consulting service for a period of six months thereafter. Dubois Depo., Exh. 3, ¶¶ B, C. LifeCare would pay Dubois $55,321.00, an amount equal to four months' salary, if, for the six-month period, Dubois made herself available to LifeCare to provide 20 hours per month of consulting services, as needed. Id., at ¶2. Further, Dubois would be paid $75 per hour if she worked more than 10 hours per month. Id. Before receiving the draft agreement, Dubois understood that she would be paid four months' salary. Dubois Depo., pp. 112-13. However, she did not know the number of hours she would be required to work, and was unaware of her opportunity to earn extra income. Id.

Under the proposed consulting agreement, Dubois would be subject to the non-compete provision in the Employment Agreement while employed as a consultant and six months thereafter, or until November 19, 2006. Dubois Depo., Exh. 3, ¶10. Dubois took issue with the inclusion of the non-compete provision, and the failure to continue medical benefits. Dubois Depo., p. 114. To that end, Dubois sent Force an e-mail on November 8, 2005, stating, in pertinent part, that:

> This does not reflect the agreement that Bryan [Burklow] and I discussed. We had discussed the four months severance with Medical insurance. Five days after we discussed this, Bryan asked me about a twelve month non-compete. At that time I asked if I would be paid for twelve months. Jill, I never agreed to a twelve month non-compete. This is an unprecedented request as nobody that has ever resigned has been asked to do this. People have resigned across this company and routinely received their six month severance with a six month non-compete. . . .

Dubois Depo., pp. 116-18, Exh. 4 to depo. There is no evidence before this Court that the proposed

6

consulting/severance agreement sent by Force to Dubois was ever signed.

Dubois' last official day of employment with LifeCare was November 19, 2005. Dubois Depo., p. 98. LifeCare paid Dubois her salary through that date. Id.

## II.     Procedural History.

On January 3, 2007, Dubois filed this lawsuit in the First Judicial District Court, Caddo Parish, Louisiana. This matter was removed to this Court on grounds of diversity jurisdiction on February 16, 2007. Dubois asserts that she is, alternatively, entitled to: nine months' salary and benefits for the remainder of her employment term as stated in the Employment Agreement; six months' salary and benefits pursuant to the severance payment provision of the Employment Agreement; or, four months' salary and benefits under the terms of the consulting agreement. Dubois further asserts that she is entitled to penalties, costs and attorney fees based on LifeCare's violation of La. R.S. 23:631 and 632.

LifeCare has filed the motion presently before the Court, and asserts that Dubois cannot provide the Court a basis upon which LifeCare would be obligated to pay Dubois the wages claimed. This Court agrees.

## SUMMARY JUDGMENT STANDARD

Under Fed. R. Civ. P. 56(c), summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." A fact is "material" if it may affect the outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue is "genuine" if there is sufficient evidence so that a reasonable jury could return

a verdict for either party. Id. The court must "review the facts drawing all inferences most favorable to the party opposing the motion." Reid v. State Farm Mutual Auto Insurance Co., 784 F.2d 577, 578 (5th Cir. 1986).

The moving party bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions, and/or affidavits that it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Lawrence v. Univ. of Tex. Med. Branch at Galveston, 163 F.3d 309 (5th Cir. 1999). The moving party need not produce evidence to negate the elements of the non-moving party's case, but need only point out the absence of evidence supporting the non-moving party's case. Celotex Corp., 477 U.S. at 325; Lawrence, 163 F.3d at 311.

Once the moving party carries its initial burden, the burden then falls upon the non-moving party to demonstrate the existence of a genuine issue of material fact. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 584-88, 106 S.Ct. 1348, 1355-56, 89 L.Ed.2d 538 (1986). The non-moving party "must go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial." Wallace v. Texas Tech. Univ., 80 F.3d 1042, 1047 (5th Cir. 1996) (citations omitted). This burden is not satisfied with some metaphysical doubt as to the material facts, by conclusory or unsubstantiated allegations, or by a mere scintilla of evidence. Little v. Liquid Air. Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). In the absence of any proof, the court will not assume the non-moving party could or would prove the necessary facts. Id.

## LAW AND ANALYSIS

I. **Claims for Nine Months' Salary and Benefits Under the Employment Agreement.**

Dubois asserts that she is entitled to the base salary and benefits provided in the Employment Agreement for its unexpired term from November 19, 2005 until August 22, 2006. LifeCare asserts that Dubois performed no job duties or consulting services for LifeCare after November 19, 2005.

The Employment Agreement requires that Dubois "devote [her] full time (except for reasonable vacation time and absence for any disability), attention, and best efforts to the performance of [her] duties" as Senior Vice President of Clinical Services. Employment Agr., §1.2. The terms of the Employment Agreement also provide that Dubois' "[b]ase salary [would be] prorated (on a daily basis) for any partial payroll period of employment" under that Agreement. Id., at §3.1.

In her deposition, Dubois stated that after Burklow "sent [her] home . . . [she] was still somewhat involved in calls over . . . Hurricane Katrina" but once she received the draft consulting agreement "and felt it was inaccurate, calls gradually declined to [her] cell phone." Dubois Depo., p. 104. Dubois received these "fact-gathering" telephone calls concerning the New Orleans area hospitals and their employees in October 2005. Id., at pp. 104-10. Dubois received no such calls in November 2005. Id., at p. 110.

Dubois has come forward with no evidence that she provided any services to LifeCare after November 19, 2005. She has cited no provision in the Employment Agreement requiring LifeCare to pay her salary through the end of the renewed term. Further, it is undisputed that Dubois was paid through November 19, 2005. See Dubois Depo., p. 98.

As there is no legal basis to obligate LifeCare to pay plaintiff nine months' base salary and

9

benefits, plaintiff's wage claims to that effect fail as a matter of law.

## II. Claims for Six Months' Salary and Benefits as Severance Pay Under the Employment Agreement.

Dubois asserts that, pursuant to §5.2 of the Employment Agreement, she is entitled to six months' salary and benefits as she was terminated without cause by LifeCare. To be entitled to the six months' severance pay and benefits claimed under the Employment Agreement, Dubois had to come forward with evidence showing that a genuine issue of material fact exists that:

(1) LifeCare terminated Dubois' employment without cause; and

(2) LifeCare received a Settlement Agreement, General Release, and Covenant Not Sue executed by Dubois.[4]

See Employment Agr., §§5.2, 5.3.

LifeCare asserts that the undisputed evidence before this Court shows that Dubois, not LifeCare, terminated the employment relationship. Therefore, no obligation to pay severance was ever triggered. LifeCare further asserts that Dubois never executed a settlement/release agreement as required under §5.3 of the Employment Agreement.

In response to the allegation that Dubois resigned, Dubois provides the Court her affidavit wherein she states that she "never intended to resign her employment unless some alternate arrangements could be worked out." Dubois Aff., ¶4. Dubois also states that she "only agreed to the termination of her employment agreement based on the agreement she and LifeCare reached regarding her consulting agreement." Id., at ¶5. Dubois also testified in her deposition that she

---

[4]LifeCare has not made any allegation with regard to the third requirement that Dubois comply with certain provisions of the Employment Agreement  As no issue has been raised, the Court will assume for purposes of this motion that Dubois' compliance with those provisions is undisputed.

10

"agreed that if [LifeCare] could not keep me involved in some form or fashion, [she] would stay on as a full-time employee." Dubois Depo., p. 120. Dubois further asserts that she did, in fact, execute the release agreement, and cites to Exhibit 2 to her deposition which consists of the Employment Agreement and the Settlement Agreement and Release signed by Dubois but not completed.

The evidence before this Court shows that Dubois approached Burklow seeking reduced hours and travel after Hurricane Katrina. A discussion ensued regarding the possibility of Dubois staying on as a consultant. In mid-October 2005, Dubois "supported" Burklow[5] at an administrator's meeting when he announced to the group that Dubois had resigned from her position as Vice President to spend more time with her family but would remain with LifeCare as a consultant. Dubois never agreed to the terms of the consulting agreement proposed by LifeCare. There is no evidence before this Court of any further communications or negotiations between Dubois and LifeCare with regard to Dubois' continued full-time employment or consulting arrangement after November 8, 2005, when Dubois responded to Force's e-mail containing the proposed consulting agreement.

The Court will assume for purposes of this motion that Dubois' undated signature on the incomplete Settlement Agreement and Release constitutes execution of that document sufficient to meet that condition for receipt of severance benefits. See La. C.C. art. 1772.[6] However, this Court finds that plaintiff's self-serving allegations that she only intended to resign as Vice President if she could reach an agreement to remain as a consultant for LifeCare are insufficient to defeat summary

---

[5] See Dubois Depo., p. 100.

[6] Article 1772 provides that "[a] condition is regarded as fulfilled when it is not fulfilled because of the fault of a party with an interest contrary to the fulfillment."

11

judgment. See United States v. Lawrence, 276 F.3d 193, 197 (5th Cir. 2001), quoting Munitrad Sys., Inc. v. Standard Poor's Corp., 672 F.2d 436, 440 (5th Cir. 1982) ("Such self-serving allegations are not the type of 'significant probative evidence' required to defeat summary judgment.")

Accordingly, plaintiff has not met her burden on summary judgment, and her claims for six-months' severance pay under the Employment Agreement must also be dismissed.

### III. Claims for Four Months' Salary and Benefits Pursuant to the Consulting Arrangement.

Dubois asserts that she is entitled to four months' salary and benefits under the consulting agreement with LifeCare.

Louisiana Civil Code article 1927 provides that "[a] contract is formed by the consent of the parties established through offer and acceptance." Article 1927 further provides that "[u]nless the law prescribes a certain formality for the intended contract, offer and acceptance may be made orally, in writing, or by action or inaction that under the circumstances is clearly indicative of consent." The Court must find that the parties had a meeting of the minds to constitute consent. Landers v. Integrated Health Services of Shreveport, 903 So.2d 609, 612 (La. App. 2 Cir. 2005). The existence or nonexistence of a contract is a question of fact. Id.

The evidence before this Court shows that in October 2005, Dubois and Burklow discussed the possibility of Dubois acting as a consultant for LifeCare for a certain period of time in exchange for four months' salary and, presumably, some benefits. General counsel for LifeCare, Jill Force, sent Dubois an e-mail containing the proposed terms of the consulting agreement. It is undisputed that Dubois rejected the terms as presented. There is no evidence before this Court of any further negotiation with regard to the terms of a consulting arrangement between Dubois and LifeCare.

The burden of proving a contract of employment is on the plaintiff. Teague v. Ashy, 278

12

So.2d 516, (La. App. 3rd Cir. 1973). It is clear that LifeCare made an offer in the form of the proposed consulting/severance agreement. Dubois flatly rejected that offer in her e-mail of November 8, 2005, wherein she stated that "[t]his [consulting/severance agreement] does not reflect the agreement that Bryan [Burklow] and I discussed . . . I never agreed to a twelve month non-compete." Dubois Depo., Exh. 4 to depo. Further, Dubois admits in her affidavit offered in support of her opposition to defendants' motion that:

> The terms of the "Separation and Consulting Agreement" were different from the arrangement previously proposed to plaintiff by LifeCare in that it purported to extend the consulting period to six months and to extend her non-competition restriction for a period of six months thereafter. These provisions were unacceptable to plaintiff . . .

Dubois Aff., ¶5. An offer, once rejected, is extinguished and cannot be accepted at a later time. See Sweet v. Iberia Parish Sch. Bd., 746 So.2d 256, 269 (La. App. 3 Cir. 1999) ("Ordinarily, an offer must be accepted in 'toto; if declined it is at an end and cannot be revived by a subsequent assent.'") (citing Leaman v. Putnam, App. 1923, Orleans No. 8742).

There has been no meeting of the minds between LifeCare and Dubois regarding a consulting arrangement whereby LifeCare would owe Dubois four months' salary or benefits. Without such an agreement, LifeCare is under no contractual obligation to pay Dubois the relief requested. Further, Dubois has offered no other theory upon which LifeCare would be required to pay her four months' salary and benefits. Accordingly, plaintiff's claim for four months' salary must also fail as a matter of law.

### IV.    Claims for Attorney's Fees and Penalties Under La. R.S. 23:631 and 23:632.

Dubois asserts that she is entitled to wages, and attorney fees pursuant to La. R.S. 23:631 and 632. It is well established that attorney fees are not allowed in Louisiana except where authorized

by statute or contract. Rivet v. State, 680 So.2d 1154, 1160 (La. 1996). Attorney fees are allowed pursuant to La. R.S. 23:632 only when an employer fails or refuses to comply with La. R.S. 23:631. La. R.S. 23:631 "requires payment by an employer, within certain specified time periods, of any previously earned but unpaid wages due at the time of the employee's termination." Lamonte v. Premier Sales, Inc., 821 So.2d 120, 122 (La. App. 5 Cir. 2002).

It is undisputed that Dubois was paid through her last day of employment, November 19, 2005. Dubois Depo., p. 98. Dubois' claims for "unpaid wages" were for future wages or severance pay allegedly due pursuant to breach of contract claims. See Lamonte, 821 So.2d at 122. "Damages for breach of contract, even in the nature of lost wages, do not come under La. R.S. 23:631." Id. As plaintiff has no claim for past wages, her claims pursuant to La. R.S. 23:631 and 632 must also be dismissed.

## CONCLUSION

For the reasons stated above, plaintiff has failed to meet her burden of proof on summary judgment. Accordingly, her claims are **DISMISSED**.

_____
DONALD E. WALTER
UNITED STATES DISTRICT JUDGE